FILED

2013 Jan-31  AM 08:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DANNY LEE GARNETT,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:11-cv-03559-AKK** |
| **ERIC H. HOLDER, JR., in his** | ) | |
| **Official Capacity as Attorney** | ) | |
| **General of the United States** | ) | |
| **Department of Justice (Federal** | ) | |
| **Bureau of Investigation) Agency,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Danny Lee Garnett brings this action against Eric H. Holder, Jr., in his official capacity as Attorney General of the United States Department of Justice, pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"), for alleged wrongful conduct.  Doc. 1. Defendant seeks dismissal of the complaint or, alternatively, summary judgment for failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted.  Doc. 8.  The motion is fully briefed and ripe for resolution.  Docs. 9, 13, 15.  For the reasons stated below, the court **GRANTS** Defendant's motion.

# I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*,556 U.S. at 678 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. PROCEDURAL AND FACTUAL BACKGROUND[1]

Garnett retired from the Federal Bureau of Investigations ("FBI") on December 31, 2010 after more than twenty-seven years.  Doc. 1 ¶ 9.  Prior to his retirement, Garnett worked in the Gadsden Resident Agency ("GRA") of the Birmingham Division as a Special Agent.  *Id*.  At some point, Garnett formed a belief that Supervisory Special Agent ("SSA") John Bacot showed preferential treatment to another Special Agent.[2]  *Id*. at ¶ 20.  To address this issue, Garnett requested and attended a meeting with Special Agent in Charge ("SAC") Carmen

---

[1]"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).

[2] Garnett never specifies on what basis SSA Bacot, an African-American male, showed preferential treatment or which Special Agent received this preferential treatment.  *See* doc. 1.

Adams and Assistant Special Agent in Charge ("ASAC") D. Keith Bryars on

January 8, 2007. *Id*. at ¶ 19.  Although it is unclear what prompted the comment

since race was not previously mentioned by Garnett, Adams commented during

the meeting that Garnett would "never win a reverse discrimination law suit." *Id*.

at ¶ 21.  The next day, Adams and Bryars informed Garnett that they had decided

to remove Bacot from his position. *Id*. at ¶ 22.  The following day, Garnett and

other agents met to discuss the events and decided to talk to Equal Employment

Opportunity ("EEO") Coordinator Lorenza Moore about their concerns.[3]  *Id*. at ¶

24.  After a thirty day "cooling off period," Moore asked the agents if they planned

to file an official complaint and learned that the agents had not yet decided to do

so. *Id*. at ¶ 35.

On September 24, 2007, SSA  Lasky,[4] the supervisor selected to replace

Bacot, arrived at the GRA. *Id*. at ¶ 38.  At some point, Lasky commented "that

[Garnett] was untouchable because [Garnett] could retire anytime at [Garnett]'s

choosing." *Id*. at ¶ 40.  Later, in January 2008, Lasky stated that Garnett and the

other agents who had talked with Moore "had targets on them." *Id*. at ¶ 41.

Sometime thereafter, Garnett contacted SSA Ryan Zarfoss, Acting Unit Chief in

---

[3] The complaint does not specify what these concerns regarded or what served as the basis for Garnett's complaint to Moore.

[4] Garnett does not provide Lasky's first name in his Complaint.

the Office of Professional Responsibility, who advised Garnett that he must outline his allegations in writing. *Id.* at ¶ 45. As a result, Garnett and another agent sent a letter to Zarfoss on February 13, 2008, detailing allegations of senior management covering up or failing to address "problems."[5] *Id.* at ¶ 46. The letter also alleged "retaliation by Birmingham executive management against [Garnett] and SA Perkins after they presented the problems with SSA Bacot." *Id.* Allegedly in response to the letter, Lasky engaged in "retaliatory and harassing activities in an attempt to force [Garnett] to retire" as a way to cover up Lasky's "questionable conduct in connection with a sensitive investigative matter." *Id.* at ¶¶ 48-49.

On October 1, 2008, Garnett advised Moore that he wanted to file an EEO Complaint and completed the initial paperwork.[6] *Id.* at ¶ 57. Three weeks later, Garnett contacted ASAC Jeffrey K. Vasey and told him about the letter he sent to Zarfoss in February. *Id.* at ¶ 63. Sometime thereafter, Adams received complaints that Garnett "was hurting liaison with local law enforcement agencies." *Id.* at ¶ 64. Garnett believes that his EEO Complaint (which he apparently filed after

---

[5] Although Garnett alleged that "[t]he letter contained specific information concerning problems which were either covered up or never addressed by Birmingham senior management[,]" and that it "specifically set forth allegations of retaliation . . . against [him] and SA Perkins after they presented the problems with SSA Bacot[,]" Garnett failed to outline the content of the "problems" he presented and in what way he was retaliated against. Doc. 1 at ¶ 46.

[6] Garnett did not attach this initial paperwork to his complaint or describe its contents.

completing the initial paperwork) and subsequent contact with Vasey precipitated these complaints and that Lasky orchestrated the complaints to cover up his "questionable conduct." *Id.* at ¶¶ 49, 64. Moreover, in violation of FBI policy and allegedly "in retaliation for [Garnett's] contact with ASAC Vasey at DOJ/OIG and the new EEO complaints filed by SA Perkins and [Garnett]," Adams temporarily reassigned Garnett to the Birmingham office without referring the matter to the Office of Professional Responsibility. *Id.* at ¶¶ 65-66. Additionally, Lasky gave Garnett a negative Performance Appraisal Report, which Garnett also contends was "in retaliation against [him] for filing the EEO complaint in October 2008 and exposing [Lasky's] questionable actions in connection with the narcotics investigation." *Id.* at ¶ 67.

SSA Gary Ludwick ("Ludwick") came to Alabama in February 2009 to investigate Garnett's EEO Complaint. However, Ludwick allegedly failed to interview multiple witnesses who had information "directly related to [Garnett's] complaint." *Id.* at ¶ 74. Garnett later suffered chest pains and underwent a double bypass heart operation in early January 2010, purportedly caused by the stress he endured because of his work environment. *Id.* at ¶ 77. Garnett retired on December 31, 2010. *Id.* at ¶ 9.

# III.  ANALYSIS

Garnett filed this suit against Holder alleging violations of his rights under Title VII of the Civil Rights Act of 1964 and the Fifth Amendment.  Doc. 1, at 17-21.  Holder asserts that Garnett's claims are due to be dismissed for lack of subject matter jurisdiction and failure to state a claim.  Doc. 9.  Holder's jurisdictional assertion is based on Garnett's purported failure to exhaust administrative remedies.[7]  *Id*. at 17.  Although Garnett alleged five bases for age-based discrimination in his EEO Complaint, he never raised **any** allegations under Title VII.[8]  Doc. 9-2 at 1-2.  In order to pursue claims under Title VII, an employee must first exhaust his administrative remedies.  *Brown*, 425 U.S. at 837.  The exhaustion

---

[7] Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss based on the defense that the court lacks subject-matter jurisdiction, and a federal employee must exhaust his administrative remedies before filing a Title VII action in federal district court.  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976).

[8] The Office of Equal Employment Opportunity Affairs only accepted four of these bases for investigation and specifically stated that it would consider only whether Garnett was discriminated against on the basis of "age. . . and reprisal for his prior participation in protected EEO activity, and subjected to a hostile work environment when: (1) from approximately September 2007 until the filing of this complaint, complainant was subjected to heightened scrutiny of his owrk by the Supervisory Special Agent, was subjected to unrealisitc goals, was frequently reassigned cases, was assigned to a temporary duty assignment in Birmingham, was accused of not following the chain of command, and was accused of insubordination; (2) in January 2008 and on February 12, 2008, the SSA[] commented that complainant, along with two other Special Agents, had 'targets' on them; (3) in June 2008, the SSA made demeaning and derogatory comments about complainant to federal prosecutors; and (4) on November 7, 2008, complainant received his Performance Appraisal Report, which contained negative comments."  Doc. 9-2 at 2.  Garnett's remaining allegations were not accepted for investigation because they were untimely.  *Id*.

of administrative remedies is critical to "[t]he crucial administrative role that each agency . . . was given by Congress in the eradication of employment discrimination . . ." *Id*. at 833.  Importantly, "[a] purpose of Title VII's exhaustion requirement is to notify the defendant of the allegations and to give the EEOC the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Stuart v. Jefferson Cnty. Dept. of Human Resources*, 152 Fed. Appx. 798, 801 (11th Cir. 2005) (*quoting Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotation marks omitted).  Garnett failed to provide the defendant with such notice or to allow the EEOC to seek voluntary compliance.  Accordingly, Garnett's Title VII claims are due to be dismissed for lack of subject matter jurisdiction.  *See Brown*, 425 U.S. at 832.

Alternatively, as discussed below, Garnett's complaint is due to be dismissed for failure to state a viable claim.

## A.   Conspiracy to Deprive Title VII Rights – Count One

Garnett contends in Count One that "FBI employees, acting in concert with each other, . . . confederated and conspired to deprive Plaintiff of [his Title VII rights], in violation of 42 U.S.C. § 1985(3)."  Doc. 1 ¶ 89.  This claim fails,

however, because section "1985(3) may not be invoked to redress violations of

Title VII." *Gr. Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979).

Additionally, Garnett fails to state any protected class-based discriminatory

conduct necessary to succeed on a § 1985(3) claim.  *See Smith v. Belle*, 321 F.

App'x 838, 845 (11th Cir. 2009) (quoting *Griffin v. Breckenridge*, 402 U.S. 88,

102 (1971) ("To state a claim for relief under § 1985(3), a plaintiff must establish

that there was 'some racial, or perhaps otherwise class-based, invidiously

discriminatory animus behind the conspirators' actions.'")).  Accordingly,

Holder's motion to dismiss Count One is **GRANTED**.

**B.    Violations of Title VII – Counts Two and Six**

In Counts Two and Six, Garnett alleges that the FBI "engaged in continuing

violation[s] of Title VII by knowingly allowing a broken EEO program and hostile

environment to continue in the Birmingham Division despite repeated

notification" and by "threatening employees and retaliating against employees,

including the Plaintiff, who would raise concerns about the EEO program or who

would consider filing an EEO complaint[.]"  Doc. 1 at ¶¶ 113,114.  According to

Garnett, the FBI "knew of the wrongful conduct but failed or refused to prevent it

or aid in preventing it and therefore is liable" for deliberate indifference and

failure to prevent violation of Title VII rights.  *Id*. at ¶ 95.

Even accepting these factual allegations as true, Garnett's contentions fail to state a claim upon which relief may be granted. Title VII prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (2012). To establish a *prima facie* case of discrimination, Garnett must show "(1) that [he] belongs to [a] protected class; (2) [he] was qualified to do [the] job; (3) [he] was subjected to [an] adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Garnett failed to make any such showing. Instead, although Garnett asserts broadly that the FBI violated Title VII, he failed to allege the specific discrimination that falls within any characteristic protected by Title VII. In fact, Garnett does not even allege "race, color, religion, sex, or national origin" discrimination in his Complaint or in his EEO charge. *See* doc. 9-1 at 1; doc. 1. Indeed, the closest Garnett comes to identifying a protected characteristic is when he asserts that "SAC Adams commented 'you'll never win a reverse discrimination law suit.'" Doc. 1 ¶ 21. This comment, however, without more, does not constitute "more than a sheer possibility that [the] defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. After all, telling someone that they will not prevail in a discrimination lawsuit does not in itself form a separate basis for a

Title VII claim.  Therefore, Holder's motion is **GRANTED** with respect to Counts Two and Six.[9]

## C.    Failure to Accept Proper Issues – Count Three

Garnett alleges in Count Three that the FBI "failed to accept for investigation Plaintiff's claim of retaliation" and that "had a proper investigation been conducted , including retaliation and hostile work environment, the improper practices involving Moore, SAC Adams and others would have been unconvered and additional acts of retaliation would have been avoided."  Doc. 1 at ¶¶97,98.  The court is unfamiliar with any federal or state cause of action that provides relief for this type of claim.  *See Odom v. Holder*, No. 2:11-cv-03086-LSC, 2012 WL 1745643, at *3 (N.D. Ala. May 11, 2012) (holding that "defendant failed to accept proper issues" does not state a viable cause of action on its own).  Therefore,

_____

[9] Interestingly, although Garnett does not allege age discrimination in his Complaint, he mentions it in his response to the motion to dismiss.  Doc. 13, at 9.  Generally, in evaluating a motion to dismiss, the "scope of the review must be limited to the four corners of the complaint." *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citing *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  However, even if the court considers the age discrimination allegation set forth in the Response, Garnett has not alleged sufficient facts to state a claim under the Age Discrimination in Employment Act ("ADEA").  The only allegation that Garnett raises that could give rise to an inference of age discrimination is Lasky's comment "that Plaintiff was untouchable because Plaintiff could retire anytime at Plaintiff's choosing." Doc. 1 ¶ 40.  However, rather than supporting an inference of age bias, the comment actually suggests the opposite, i.e. immunity from any such bias. In any event, the comment by itself and the rest of the allegations fail to show "more than a sheer possibility that [the] defendant has acted unlawfully" due to Garnett's age.  *Iqbal*, 556 U.S. at 678.

Holder's motion to dismiss Count Three is **GRANTED**.

**D.     Violation of the 5th Amendment – Count Four**

In Count Four, Garnett asserts that Holder violated his Fifth Amendment rights when "[Holder] failed to recognize [Garnett's] right to anonymity and legal representation during [the] complaint process when SAC Adams ordered [Garnett] to a meeting where she verbally discouraged what she believed was [his] EEO involvement" and "when SAC Adams ordered [Garnett] to [another] meeting where she engaged in an adverse personnel action."  Doc. 1 at 19.  The court is unaware of any constitutional right to anonymity in EEO complaint procedures. Further, the constitutional right to counsel generally applies only in criminal cases. *See* U.S. CONST. amend. V; U.S. CONST. amend. VI; *Miranda v. Arizona*, 384 U.S. 436, 442 (1966); *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) ("Appointment of counsel in a civil case is not a constitutional right.  It is a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner.").  An alleged failure to acknowledge an employee's right to representation simply does not rise to a constitutional violation.  Complaints about an alleged failure to follow FBI protocol or for purportedly engaging in adverse personnel action against Garnett, doc. 1 at 4-5, 12, 14, are simply not the type of

issues that require or warrant the assistance of counsel or form the basis for a Constitutional claim.  Therefore, Holder's motion to dismiss Count Four is **GRANTED**.

### E.    Retaliation – Count Five

Finally, in Count Five, Garnett asserts a retaliation claim under Title VII. Doc. 1, at 19-20.  To establish such a claim, a plaintiff must demonstrate "(1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action."  *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).  A plaintiff need not prove the merits of his underlying claim in order to show that his expression was statutorily protected.  *Tatt v. Atlanta Gas Light Co.*, 138 F. App'x 145, 147 (11th Cir. 2005).  Rather, the plaintiff need only show that he had "a good faith, reasonable belief that [his employer] was engaged in unlawful employment practices."  *Id*.

This standard has both a subjective and an objective component.  *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).  "It is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable."  *Id*.  Further "[a]n employee cannot

be said to have a subjectively or objectively reasonable belief that she opposed an unlawful employment practice when her opposition is based on conduct that is not proscribed by Title VII." *Bicknell v. City of St. Petersburg*, No. 8:03-CV-1045-T-27, 2006 WL 560167, at *6 (M.D. Fla. Mar. 7, 2006) (citing *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) and *Hamner v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000)).

As discussed above, Garnett does not allege that the FBI discriminated against him on any basis covered by Title VII or that he opposed any discriminatory practice prohibited by Title VII – or for that matter the ADEA.[10] Garnett states only that the FBI retaliated against him when he complained about the handling of procedures within the FBI.  Doc. 1 ¶ 83.  For example, Garnett alleges that "SAC Adams was intent on retaliating against [him] for exposing a problem within the Birmingham Division and did so in complete disregard of the facts," doc. 1 ¶ 30, that Lasky gave him a negative Performance Appraisal Report "in retaliation against Plaintiff for filing the EEO complaint in October 2008 and exposing his questionable actions in connection with the narcotics investigation," doc. 1 ¶ 67, and that "the FBI HQ EEO Unit and OPR Unit [failed] to take swift

---

[10] As stated previously, Garnett raised an age discrimination claim for the first time in his brief.  *See* doc. 13.

and appropriate action to address the mishandling of the Birmingham EEO program," which "allowed an ongoing improper practice to continue in the Birmingham Division . . . ."  Doc. 1 ¶ 109.  Unfortunately, none of these incidents triggers any discriminatory employment practices prohibited by Title VII or the ADEA.  Garnett's complaints about the FBI's internal procedures are not protected activity under either statute, even if they were made to the EEO Coordinator or styled as an "EEO Complaint."  *See Entrekin v. City of Panama City, Fla.*, 376 F. App'x 987, 994 (11th Cir. 2010) (holding that plaintiff's opposition to employer's internal procedures for handling sexual harassment complaints was not protected activity under Title VII because Title VII "does not . . . establish requirements for an employer's internal procedures").

Ultimately, it is not enough that "[a]t all times, [Garnett] believed that the issues brought forward were done so under the protection of Title VII," doc. 1 ¶ 83, because this belief was neither subjectively nor objectively reasonable, as neither Title VII nor the ADEA cover claims premised on a failure to follow internal organizational procedures.  *See Little*, 103 F.3d at 960; *see also Bicknell*, 2006 WL 560167, at *6.  Thus, Garnett's retaliation claim must also fail, and Holder's motion to dismiss Count Five is **GRANTED**.

## IV.  CONCLUSION

The court finds that Garnett has failed to state any claims against Holder

upon which relief may be granted.  Accordingly, all of Garnett's claims are

**DISMISSED without prejudice**.

**DONE** this 31st day of January, 2013.


_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE